IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CHRISTINA DAUM,                          )
                                         )
                Plaintiff,               )
                                         )
        v.                               )   C.A. No. 14-1094 (MN)
                                         )
CPL. EUGENE MILLER, CPL. DICK, CPL.      )
LAYFIELD, POLICE OFFICER LOWE,           )
CPL. BLAKEMAN, TROOPER KESTER,           )
CAPTAIN DIXON, DE STATE POLICE-          )
TROOP 7,                                 )
                                         )
                Defendants.              )

## <u>MEMORANDUM OPINION</u>

Christina Daum, Holiday FL – *Pro Se* Plaintiff

Michael F. McTaggart:  State of Delaware Department of Justice, Wilmington, DE – attorney for defendants

October 9, 2018

NOREIKA, U.S. DISTRICT JUDGE:

On August 25, 2014, Plaintiff, Christina Daum ("Plaintiff" or "Ms. Daum"), filed a

Complaint, *pro se*, against Delaware State Police Troop #7 and individual defendants, Corporal

Eugene Miller, Corporal Dick, Corporal Layfield, Trooper Lowe, Corporal Blakeman, Trooper

Kester, Captain Dixon and Delaware State Police Troop 7 (collectively "Defendants"), alleging

violations of 42 U.S.C. § 1983 for actions that purportedly (D.I. 1 at 1):

> deprived plaintiff of rights of handicap, race, color, sex and religion secured under
> the Constitution and laws of the United States, conspiring for the purpose of
> impeding and hindering the due course of justice with intent to deny plaintiff equal
> protection of law, causing physical harm by dragging plaintiff into police station
> while unconscious, failing to provide medical care in a timely fashion, abusing
> power, negligence, intentional injury, conspiring and refusing or neglecting to
> prevent deprivations and denials to plaintiff

> \* \* \*

> [and] violated equal protection laws by their dereliction of duties, flagrant false
> arrests, harassment, physical abuse, emotional abuse, malicious prosecution,
> discrimination, slander, and blatant abuse of power.

Ms. Daum's Complaint also appears to assert state law claims for abuse of process, physical and

mental abuse and intentional infliction of pain.  (*Id.*).  Presently pending before the court is

Defendants' motion for summary judgment on all pending claims.  (D.I. 35).  The court has

jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over the state

law claims pursuant to 28 U.S.C. § 1367.

No discovery has been taken in the case.[1]  In support of their motion, Defendants submitted

approximately 600 pages of Appendices,[2] including the applicable arrest warrants, the transcripts

---

[1]     Defendants served Ms. Daum with interrogatories and requests for production of
documents on March 16, 2016 (D.I. 29; D.I. 30) but received no response.  Defendants
noticed the deposition of Ms. Daum for August 1, 2016 (D.I. 32; D.I. 33), but that
deposition did not take place.  Plaintiff has not requested any discovery.

[2]     The Appendix is D.I. 37, and the pages of the Appendix are numbered A-1 through A-603.

of Ms. Daum's preliminary hearing and trial, Ms. Daum's Plea Agreement, a declaration of Corporal Miller and car dash camera footage from Corporal Miller's police car. (D.I. 37). In addition to referencing allegations in her Complaint, Plaintiff submitted the car dash camera footage from Corporal Miller's police car (D.I. 45) as well as "Progress Notes," dated between June 22, 2011 and July 15, 2013, and letters from Richard L. Todd, Ph.D., Plaintiff's therapist (D.I. 44 at 7-13; D.I. 47).

Plaintiff concedes that Defendants are entitled to summary judgment on all claims for false arrest but opposes Defendants' motion for summary judgment with respect to claims asserting excessive force and violation of due process and constitutional rights. (D.I. 44 at 1).

## I.      BACKGROUND

Plaintiff's claims arise from her interactions with Troop 7 officers on August 23, 2012 and October 1, 2012.[3] The facts are largely undisputed, but where disputes are alleged, they are noted below.

### A.      August 23, 2012

On August 23, 2012, Corporal Miller responded to a complaint "about a female removing property from a residence" at 9 Carriage Lane, Rehoboth, Delaware. (D.I. 37, A-15; A-600). When Corporal Miller arrived on the scene, Corporal Dick of the Delaware State Police was already present. (*Id.*). Corporal Miller observed a parked white van. (*Id.*). He spoke to the driver of the van, Teferi Nessibov, and observed Ms. Daum in the passenger seat of a white van. (D.I. 37, A-20; A-600). Corporal Miller spoke briefly with Ms. Daum, and she appeared to tell him that her lawyer had instructed her not to talk to him. (D.I. 37, A-600; A-603).

---

[3]      In her Complaint, Plaintiff discusses the events of October 2, 2012. Police and court records, however, suggest she is referring to events from October 1, 2012.

Corporal Miller also spoke with Leonard Marchone and Bonnie Helder. (D.I. 37, A-600-01). Mr. Marchone, who rents the property from Ms. Helder, advised that he saw Ms. Daum carrying boxes to the white van and attempting to remove a ladder from a shed at the rear of the residence. (D.I. 37, A-20-22; A-600). The boxes contained property belonging to Mr. Marchone and Ms. Helder. (D.I. 37, A-24). The police observed damage to the lock on the shed. (D.I. 37, A-28). The police inspected the boxes and found equipment, fishing poles, golf clubs, and family pictures that belonged to Mr. Marchone, and some linens that belonged to Ms. Helder. (D.I. 37, A-28). Mr. Nessibov, the driver of the minivan, confirmed that Plaintiff had taken items from the shed and placed them in the white van and granted police access to look in the white van. (D.I. 37, A-16).

Corporal Miller then again tried to speak to Ms. Daum. She attempted to verify the insurance on the van, but ultimately shut and locked the door of the van. (D.I. 37, A-601). Corporal Miller was "eventually able to remove [Ms.] Daum from the minivan and place[] [her] in [his] marked police car." (D.I. 37, A-601). Plaintiff alleges that she was placed in the backseat of Corporal Miller's "car for almost an hour without turning the car on or putting the air conditioner on" (D.I. 1 at 9) and that she was left in the back of the vehicle "for approximately 40-50 minutes" in 95-degree heat. (D.I. 44 at 1-2). According to Corporal Miller's dash camera (which was submitted by Defendants (D.I. 37, A-603) and by Plaintiff (D.I. 45)), however, Ms. Daum was in the vehicle for approximately 12 minutes. (D.I. 37, A-603; D.I. 45). Plaintiff also alleges that the vehicle and air conditioning were off while she was in the car. (D.I. 1 at 9). The dash camera footage, however, suggests that the car was on – as the car radio can be heard on the recording

during the time Ms. Daum was in the car.[4] (D.I. 37, A-603). Finally, Plaintiff alleges that her requests for medical assistance were ignored and that she subsequently passed out due to heat. (D.I. 37, A-9; D.I. 44 at 1). The dash camera footage recorded Plaintiff shouting for Mr. Nessibov to call for medical assistance, but not when Corporal Miller approached the vehicle. (D.I. 37, A-603).

After completing the witness interviews, Corporal Miller transported Plaintiff to Troop 7. Plaintiff alleges that she was unconscious or drifted in and out of consciousness throughout her time in the police car. (D.I. 1 at 1; D.I. 44 at 1-2). Corporal Miller stated that Ms. Daum "had her eyes closed and appeared to be breathing but sweating. (D.I. 37, A-601). He further stated that for the "short ride of a few minutes to Troop #7, [Ms.] Daum was seated upright in her seat, against the headrest and was not slumped over in any way." (*Id.*). Before he arrived at Troop 7, he requested assistance. (*Id.*). He stated that he "did see [Ms. Daum] open her eyes slightly when [they] arrived at the police Troop." (*Id.*).

Corporal Oliphant assisted Corporal Miller in removing Ms. Daum from the car. (*Id.*). Ms. Daum alleges that she was "drag[ged] into [the] police station while unconscious." (D.I. 1 at 1). Corporal Miller attested that he attempted to move Ms. Daum's leg, and she resisted and moved her leg back, indicating to Corporal Miller that she was cognizant. (D.I. 27, A-601). Nevertheless, Trooper Miller and Corporal Oliphant together pulled Plaintiff from the vehicle and carried her under the arms as her legs dragged on the ground. (*Id.*). Another civilian employee then came to assist, and the three carried Ms. Daum into the Troop. (*Id.* at A-601-02).

---

[4]     Corporal Miller attested in his declaration that "[t]he car was on and the air conditioning was also on in the car."

5

Once inside, Corporal Oliphant attempted to rouse Ms. Daum with smelling salts. (D.I. 37, A-602). Paramedics were called, and they transported her to Beebe Medical Center. (*Id.*). Sternum rubs were administered by both the paramedics and the Emergency Room doctor. (*Id.*). Ms. Daum was treated and released that same day. (D.I. 37, A-602).

Trooper Miller obtained an arrest warrant based on his investigation and Ms. Daum was indicted on six charges . (D.I. 37, A-12). On March 25, 2013, she pleaded guilty to Criminal Trespass First Degree and Disorderly Conduct in connection with the August 23, 2012 incident. (D.I. 37, A-127).

**B.     October 1, 2012**

According to Plaintiff's Complaint and notes from her therapist, Dr. Todd, at some time prior to 12:45 p.m. on October 1, 2012, Ms. Daum was told by a police officer that she was going to be arrested. (D.I. 1 at 1; D.I. 44 at 7). On October 1, 2012 at 7:20 p.m., Ms. Daum called 911 to report terroristic threatening. She testified that she was on the phone with the Dispatch Center for approximately 10 minutes. (D.I. 37, A-263). After being dispatched at 7:28 p.m., Trooper Lowe and Corporal Blakeman responded to the scene at approximately 7:34 p.m. and entered Ms. Daum's residence. (D.I. 37, A-264). The officers spoke with Ms. Daum and she related several landlord-tenant matters. The officers advised her that these were civil matters, outside of their jurisdiction, and would not be discussed. (D.I. 37, A-233). Ms. Daum then asserted that she had been threatened by "one or both of her tenants." (D.I. 37, A-284-85).

Ms. Daum raised issues about recording the ongoing events and discussed calling 911 to do so. (D.I. 37, A-237-38). The officers advised Plaintiff that the motor vehicle recorder ("MVR") was recording everything. (*Id.*). Corporal Blakeman further told Plaintiff that she cannot abuse 911 by calling for non-emergency reasons and if she calls while the officers are on the scene, she

would be arrested. (D.I. 37, A-237-239). Corporal Layfield then arrived and entered the residence, while Corporal Blakeman stepped outside to call the Dispatch Center to determine if threats had been heard during Plaintiff's initial 911 call. (D.I. 37, A-286).

Shortly thereafter, the officers left Plaintiff's residence to confirm the statements that Plaintiff had made and talk to tenants. (D.I. 37, A-286-287). Trooper Lowe testified that Plaintiff started shouting in the parking lot causing a scene before eventually returning inside and calling 911. (D.I. 37, A-307). Plaintiff admitted that she shouted to a neighbor as well as called 911. (D.I. 37, A-443-44). After being advised of this call by the Dispatch Center, Corporal Blakeman told Trooper Lowe to arrest Plaintiff as she had been warned she would be arrested for abusing 911 if she called again for non-emergency reasons. (D.I. 37, A-237-39; A-288).

Trooper Lowe asked Ms. Daum to open the door and advised that she was under arrest for misusing 911. (D.I. 37, A-288). Plaintiff asked Trooper Lowe if she was being arrested for calling 911, and then asked him wait a minute and closed the door when he replied yes. (D.I. 37, A-330-31). Trooper Lowe attempted to open the door, but it was secured by a chain. (D.I. 37, A-288). Through the opening, Trooper Lowe could see Plaintiff's walking away, toward the back of the apartment. (D.I. 37, A-289). After again asking Plaintiff to open the door and not receiving a response, Trooper Lowe forced the door open and saw Plaintiff "walking with a cane at a rapid pace toward the back of the residence." (D.I. 37, A-289). Trooper Lowe asked Plaintiff to stop, and when she did not, Trooper Lowe, joined by Corporal Kester grabbed her and attempted to handcuff her. (D.I. 37, A-289). Plaintiff refused to put her arms behind her back and screamed at the officers. (D.I. 37, A-290). She was told to stop repeatedly but did not and was eventually tackled to the ground. (D.I. 37, A-290-296). Corporal Blakeman entered the residence through the back door and saw Plaintiff on the ground being handcuffed. (D.I. 37, A-240).

Trooper Lowe obtained an arrest warrant (D.I. 37, A-307) and Ms. Daum was indicted on four charges. (D.I. 37, A-122-26). On July 16, 2013, a jury trial was held in the Court of Common Pleas. Plaintiff was found guilty of Resisting Arrest and Malicious Interference with Emergency Communications and was acquitted of Disorderly Conduct. (D.I. 37, A-574).

### C.    <u>Miscellaneous</u>

In addition to the events laid out above, Plaintiff complains of generalized conduct listed in her Complaint without corroborating dates or names. The conduct includes filing charges which were later dropped, giving out of personal information, failing to file police reports when requested, and lack of oversight or remediation for abusive behavior. (D.I. 1). Plaintiff also discusses non-parties' conduct at length, such as her issues with Mr. Marchone and a 2012 offensive touching case. (*Id.*).

## II.    <u>LEGAL STANDARDS</u>

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 10 (1986). If the moving party has carried its burden, the nonmovant must then "come forward with 'specific facts showing that there is a *genuine issue* for trial.'" *Id.* at 587 (quoting Fed.R.Civ.P. 56(e)) (emphasis in original). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000). The Court may not grant summary judgment if a "reasonable jury could

return a verdict for the nonmoving party." *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 459 (3d Cir. 1989).

To defeat a motion for summary judgment, however, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. United States Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

When a litigant proceeds *pro se*, as here, her submissions "are to be construed liberally and held to less stringent standards than [the] submissions of lawyers. If the court can reasonably read the submissions, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or [a] litigant's unfamiliarity with rule requirements." *Kloth v. Southern Christian Univ.*, 494 F.Supp.2d 273, 278 n. 7 (D. Del. 2007), *aff'd* 320 Fed. App'x. 113 (3d Cir. Aug.5, 2008).

III.    **DISCUSSION**

Ms. Daum's Complaint alleges that Defendants have violated her constitutional rights, and purports to assert § 1983 claims and state law claims for abuse of process and battery. As Defendants note, Plaintiff's Complaint does not specify which claims are asserted against which Defendant. The court, as did the Defendants in their motion, will address each claim individually.

A.    **42 U.S.C. § 1983 Claims**

42 U.S.C. § 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

"In order to recover under § 1983, a plaintiff must show that the defendant, under color of state law, subjected the plaintiff to a deprivation of a right, privilege, or immunity secured by the constitution or laws of the United States." *Renda v. King,* 347 F.3d 550, 557 (3d Cir. 2003) (citing § 1983); *Berg v. Cnty. of Allegheny,* 219 F.3d 261, 268 (3d Cir. 2000).

"Section 1983 is not a source of substantive rights . . . the plaintiff must allege a violation of a federal right." *Berg*, 219 F.3d at 268; *Estate of Smith v. Marasco,* 318 F.3d 497, 505 (3d Cir. 2003) (Section 1983 "merely provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws."). Thus, "[t]o state a claim under [Section] 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988). The threshold question, therefore, is whether the alleged action violates a Constitutional right.

1. **False Arrest**

As noted above, Plaintiff concedes that Defendants are entitled to summary judgment on all claims for false arrest. (D.I. 44 at 1). Ms. Daum "eventually either plead[ed] guilty or was found guilty" on criminal charges, including Resisting Arrest and Malicious Interference with Emergency Communications. (D.I. 37, A-574). Final judgment on those issues has been entered and has not been vacated. Any false arrest claim would be inconsistent with that judgment and is barred under *Heck v. Humphrey,* 512 U.S. 477, 486-87 (1994). *See also Hector v. Watt,* 235 F.3d 154, 156 (3d Cir. 2000).

2. **Malicious Prosecution**[5]

"To prevail on a malicious prosecution claim under Section 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *McKenna v. City of Phila.,* 582 F.3d 447,461 (3d Cir. 2009). To satisfy the second element – favorable termination – the "prior criminal case must have been disposed of in a way that indicates the innocence of the accused . . . ." *White v. Brown,* 408 Fed. App'x. 595, 599 (3d Cir. 2010) (citing *Kossler v. Crisanti,* 564 F.3d 181, 187 (3d Cir. 2009) (*en banc*)).

Here, Plaintiff's claims are not based on a criminal proceeding that ended in Plaintiff's favor. With respect to the August 23 arrest, Plaintiff pleaded guilty to criminal trespass and

---

[5] Plaintiff does not refer to malicious prosecution in her response to Defendants' motion, and it is unclear whether Plaintiff concedes that Defendants are entitled to summary judgment on the malicious prosecution claims as well as the false arrest claims. To the extent that it is unclear, however, the court will assume Plaintiff opposes the motion and evaluate the bases for summary judgment set forth in Defendants' motion.

disorderly conduct in exchange for *nolle prosequi* being entered on the remaining charges. (D.I. 37, A-127-128; 130). None of the charges stemming from the August 23 arrest ended in Plaintiff's favor and the malicious prosecution claim with respect to that arrest fails. *White*, 408 Fed. App'x. at 599.

With respect to the October 1, 2012 arrest, Plaintiff was arrested and charged with Resisting Arrest, Falsely Reporting an Incident, Malicious Interference with Emergency Communications, and Disorderly Conduct. (D.I. 37, A-122-25). For the False Reporting claim, *nolle prosequi* was entered. For the Disorderly Conduct charge, Plaintiff was acquitted. (D.I. 37, A-574). For the Resisting Arrest and Malicious Interference charges, Plaintiff was found guilty. (*Id.*). Plaintiff's convictions do not "indicate[] the innocence of the accused," but rather the opposite. The criminal proceeding stemming from the October 1 arrest did not end in Plaintiff's favor and the malicious prosecution claim with respect to that arrest also fails. Accordingly, Defendants are entitled to judgment as a matter of law.

### 3. Excessive Force

"Police are permitted to use a reasonable amount of force to effect an arrest; the degree of force is dictated by the suspect's behavior." *Yarnall v. Mendez*, 509 F. Supp. 2d 421, 431 (D. Del. 2007). Under § 1983, however, the use of excessive force to effect an arrest violates a suspect's Fourth Amendment rights. *Graham v. Connor*, 490 U.S. 386, 395–96 (1989). An "objective reasonableness" standard is used to determine whether officers used excessive force in effecting an arrest. *Graham*, 490 U.S. at 388. This determination requires balancing the nature of the intrusion against the importance of the government's interests claimed to justify the intrusion. *See United States v. Place*, 464 U.S. 696, 703 (1983). Each case alleging excessive force must be evaluated under the totality of circumstances, paying careful attention to the facts and

circumstances of the particular case. *See Graham*, 490 U.S. at 396. The Court in *Graham* identified specific factors for courts to consider in evaluating the totality of the circumstances, including (1) "the severity of the crime", (2) the "immediate threat" posed by the suspect to officers or others, and (3) whether the suspect was "actively resisting arrest" or "evad[ing] arrest by flight." *Id.* The Third Circuit has expanded this list of factors to include (1) whether the suspect is "violent or dangerous", (2) the "duration" of the force, (3) whether the force was used to make an arrest, (4) the "possibility" that the suspect is armed, and (5) the number of people with whom the police must contend. *Patrick v. Moorman*, 536 Fed. App'x. 255, 258 (3d Cir. 2013) (quoting *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997)).

Reasonableness is determined at the time of the alleged violation, not upon looking at the alleged violation with "20/20 hindsight." *Id.* The calculation of reasonableness must include "allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 397.

In her Complaint, Plaintiff does not refer to excessive force. Plaintiff, however, is proceeding *pro se* and thus her Complaint, even if "inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). Here, giving the Complaint the broadest possible reading, Plaintiff asserts use of excessive force while in custody after the August 23, 2012 arrest, by stating that Defendants "cause[d] physical harm by dragging plaintiff into [the] police station while unconscious." (D.I. 1 at 1).

### a.      August 23, 2012 Arrest

With respect to Plaintiff's August 23, 2012 arrest, the record shows that Trooper Miller called Corporal Oliphant for assistance upon arriving to Troop 7 because Plaintiff was non-responsive, even when the officers began physically removing her from the vehicle.  (D.I. 37, A-601-02).  Trooper Miller and Corporal Oliphant initially carried Plaintiff a short distance with her legs dragging.  (*Id.*).  There is no evidence that the duration of the "dragging" of Plaintiff's legs was extended – indeed the evidence shows that a civilian employee arrived and picked up her legs and helped to carry her into the police station.  (*Id.*).  There is also no evidence from Plaintiff (who alleges that she was unconscious at the time of this event) or any other witness.  Nor is there evidence of any injury or that the medical assistance she required after her arrest related in any way to the short period in which her legs dragged the ground.  The record indicates the use of minimal force necessary to bring Plaintiff into Troop 7 while she was non-responsive.

Taking the evidence in the light most reasonable to Plaintiff, the record is insufficient for a reasonable juror to conclude that any Defendant used excessive force in connection with the August 23, 2012 arrest.  Accordingly, Defendants are entitled to judgment as a matter of law.

### b.      October 1, 2012 Arrest

With respect to the October 1, 2012 arrest, Plaintiff does not assert any use of force – or excessive force – in her Complaint.  In her opposition to the instant motion, however, Plaintiff asserts that "[t]he police knocked in the locked [door] and tackled me to the ground."  (D.I. 44 at 2).  The discussion following that conclusory statement, however, relates to the August 23, 2012 arrest.  (D.I. 44 at 2-3).

Here, Plaintiff has not identified – in her Complaint or otherwise – which if any of the Defendants used excessive force.  Assuming, however, that her allegation of being "tackled . . . to

the ground" applies to Trooper Lowe and/or Corporal Kester, the totality of the circumstances does not suggest that excessive forced was used. While the severity of the crime is low, Plaintiff was in her home and actively evading police custody. Upon being told that she was under arrest, Plaintiff refused repeated requests to open the door and instead secured it with a chain. (D.I. 37, A-288-89, A-330-31). She then began walking rapidly toward the back of the residence. (D.I. 37, A-289). After police entered the residence and asked her to stop, she refused. (*Id.*). She was then grabbed to handcuff her, but Plaintiff refused to put her arms behind her back and actively resisted arrest.[6] (D.I. 37, A-289-90). In resisting, she was tackled to the ground and handcuffed. (D.I. 37, A-290-296). There is no evidence that the duration of the "tackling" was any longer than necessary to subdue Plaintiff, there is no evidence of any injury, and she required no medical assistance after the arrest.

Taking the evidence in the light most reasonable to Plaintiff, the record is insufficient for a reasonable juror to conclude that any Defendant used excessive force in connection with the October 1, 2012 arrest. Accordingly, Defendants are entitled to judgment as a matter of law.

### 4. Illegal Seizure

Under the Due Process Clause, pretrial detainees are protected from conditions that rise to the level of punishment. *Hubbard v. Taylor,* 399 F.3d 150, 158 (3d Cir. 2005). Courts look to the "totality of the circumstances" to determine if the conditions of confinement can be deemed to amount to punishment. *Union Cty. Jail Inmates v. Di Buono,* 713 F.2d 984, 996 (3d Cir. 1983). To succeed on a claim for illegal seizure, a plaintiff must prove that an official acted with deliberate

---

[6]     Plaintiff was found guilty of Resisting Arrest in connection with the October 1, incident.

indifference and that she suffered a deprivation of the "minimal civilized measure of life's necessities." *Hubbard,* 399 F.3d at 164 (citing *Wilson v. Seiter,* 501 U.S. 294,304 (1991)).[7]

Here, Plaintiff claims that she was left in the police "car for almost an hour without turning the car on or putting the air conditioner on" (D.I. 1 at 9) and that she was left in the back of the vehicle "for approximately 40-50 minutes" in 95-degree heat. (D.I. 44 at 1-2). Her conclusory allegations, however, cannot withstand summary judgment. *Podobnik* 409 F.3d at 594 (party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue."). Moreover, Plaintiff's allegations are inconsistent with the evidence in this case. The dash cam footage (submitted and relied upon by Plaintiff) shows that Plaintiff was left in the vehicle for less than 15 minutes. (D.I. 37, A-601). The video from the car also shows the car radio on and the MVR of the car being operational, both consistent with the car being on. (*Id.* at A-603). The video also shows that when Trooper Miller approached the car, Plaintiff ceased complaining. (*Id.*).

Looking at the totality of the circumstances, here, Plaintiff was not subjected to conditions that can be deemed to amount to punishment, nor is there any evidence that Trooper Miller acted with deliberate indifference. Accordingly, Defendants are entitled to judgment as a matter of law.

## 5.  **Deprivation of Medical Care**

Failure to provide medical care violates a detainee's Eighth Amendment rights if it rises to a deliberate indifference to serious medical need. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976).

---

[7]  "Only in the most extreme cases does the lack of heat rise to the level of a constitutional violation." *Deputy v. Taylor,* 2003 WL 361216, at *3 (D. Del. 2003). For example, enduring repeated winters in a cell with an average temperature of forty degrees and ice regularly forming on walls precluded summary judgment. *Dixon v. Godinez,* 114 F .3d 640, 646 (7th Cir. 1997). Conversely, conclusory complaints about temperature, with no allegations or evidence of the severity were insufficient to withstand summary judgment. *Anderson v. Warden of Berks Cty. Prison,* 602 F. App'x 892,894 (3d Cir. 2015).

While the Eighth Amendment does not apply where there has been no formal adjudication of guilt, courts apply the same "deliberate indifference" analysis under the due process protections of the Fourteenth Amendment. *King v. Cty. of Gloucester,* 302 F. App'x 92, 96 (3d Cir. 2008). An official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and does not take reasonable steps to avoid the harm. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). While intentionally delaying or denying access to medical care can be a manifestation of deliberate indifference, a delay does not constitute an Eighth Amendment violation if there is no harm. *Mendoza v. Lynaugh,* 989 F.2d 191, 195 (5th Cir. 1993); *see also Brooks v. Kyler,* 204 F.3d 102, 105 n.4 (3d Cir. 2000).

Here, Plaintiff's Complaint alleged that an officer "PURPOSELY left me in the back seat of hiss [sic] car for almost an hour without turning the car on or putting the air conditioner on" and that she "yelled for help and stated that [she] need to go to the hospital plenty of time[s] prior to when [she] passed out." (D.I. 1 at 9) (emphasis in original). Even taken at face value, this allegation does not claim that Plaintiff was at a substantial risk of serious harm at any point nor that any delay caused any harm. Further, the record demonstrates that Trooper Miller did not know Plaintiff needed medical care, let alone disregarded that need. The video shows that Plaintiff stopped asking for medical care when Trooper Miller approached the car. (D.I. 37, A-603). Trooper Miller stated that Plaintiff did not request medical attention and for the "short ride of a few minutes to Troop #7, [Ms.] Daum was seated upright in her seat, against the headrest and was not slumped over in any way." (D.I. 37, A-601). Before he arrived at Troop 7, he requested assistance. (*Id.*) When Plaintiff did request medical attention after arriving at Troop 7, the paramedics were called. (D.I. 37, A-602). Consistent with Trooper Miller's actions suggesting that Plaintiff did not face a substantial risk of serious harm, Plaintiff was treated and released from

the hospital the same day.  (D.I. 37, A-53; A-601-02).  Thus, Plaintiff's claim of failure to provide

medical care cannot succeed and Defendants are entitled to judgment as a matter of law.

### 6.      Illegal Search and Seizure

The Fourth Amendment, made applicable to the States by the Fourteenth Amendment, *Ker*

*v. California,* 374 U.S. 23, 30 (1963), provides in pertinent part that the "right of the people to be

secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,

shall not be violated . . . ."  *Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 61 (1992).  In her Complaint,

Plaintiff asserts that "[a]nother way that I am treated differently, treated unfairly, am discriminated

against is that some of my personal property is kept or looked through for several days without a

warrant.  One time it happened with my cell phone[8] and another time, after the October 2 arrest,

my keys were kept by Officer Layfield."  (D.I. 1 at 3-4).  Plaintiff's conclusory allegations do not

amount to a violation of the Fourth Amendment.

Inventory searches incident to arrest are "a well-defined exception to the warrant

requirement of the Fourth Amendment".  *Colorado v. Bertine*, 479 U.S. 367 (1987) (citing *Illinois*

*v. Lafayette,* 462 U.S. 640, 643 (1983) and *South Dakota v. Opperman,* 428 U.S. 364, 367–376

(1976)).  The policies behind the warrant requirement are not implicated in an inventory search,

*Opperman,* 428 U.S. at 370, n. 5, nor is the related concept of probable cause.  *Id.*  Here, Plaintiff's

allegation is essentially that her keys were taken incident to the valid October 2 arrest and not

returned quickly enough.  Courts have found that failure to return property after arrest is not the

basis for a claim for violation of the Fourth Amendment.  *See Shaul v. Cherry Valley-Springfield*

*Cent. Sch. Dist.,* 363 F.3d 177, 187 (2d Cir. 2004) ("Where . . . an initial seizure of property was

---

[8]      Plaintiff offers no allegations or evidence as to the circumstances involving the taking of
her cellphone, such as why the cellphone was taken, when the cellphone was taken, by
whom or what if anything was done with the cellphone in the "several days" it was kept.

reasonable, defendants' failure to return the items does not, by itself, state a separate Fourth Amendment claim of unreasonable seizure); *Lee v. City of Chicago*, 330 F.3d 456, 466 (7th Cir. 2003); *Fox v. Van Oosterum*, 176 F.3d 342, 350-51 (6th Cir. 1999). Accordingly, Defendants are entitled to judgment as a matter of law.

### 7.   Supervisory Liability

A § 1983 claim cannot be based solely on *respondeat superior. Ashcroft v. Iqbal,* 556 U.S. 662, 675-77 (2009). This court has previously held that:

> [f]acts showing personal involvement of the defendant must be asserted; such assertions may be made through allegations of specific facts showing that a defendant expressly directed the deprivation of a plaintiff's constitutional rights or created policies where the subordinates had no discretion in applying the policies in a fashion other than the one which actually produced the alleged deprivation; e.g., supervisory liability may attach if the plaintiff asserts facts showing that the supervisor's actions were "the moving force" behind the harm suffered by the plaintiff.

*Rahim v. Holden,* 831 F. Supp. 2d 845, 849-50 (D. Del. 2011) (internal citations and footnote omitted). Here, Plaintiff's Complaint does not specify which Defendant, if any, is a supervisor. Further, the Complaint contains only conclusory allegations that "supervisors . . . did not intervene or stop" the alleged constitutional violations and that "[t]his passive condonance caused the illegal behavior to escalate." (D.I. 37, A-1). Plaintiff fails to allege that any supervisor was "the moving force" behind any violation of the Plaintiff's rights nor enacted any specific policy that all subordinates were required to follow without discretion that led to a violation of the Plaintiff's constitutional rights. Therefore, Defendants are entitled to summary judgment as a matter of law.

### 8.   Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." Analysis of a claim asserting violation of Equal Protection asks whether the state actors "intentionally discriminate[d]

against a reasonably identifiable group and whether that intentional discrimination is nonetheless legally justified." *Hassan v. City of NY,* 804 F.3d 277, 294 (3d Cir. 2015), as amended (Feb. 2, 2016). Here, Plaintiff identifies no group to which she belongs that is being discriminated against, but instead asserts that she, individually, is treated differently than others.   (D.I. 1 at 2-3). Accordingly, Defendants are entitled to judgment as a matter of law.

### 9.   <u>Retaliation</u>

The right to access the courts "must be freely exercisable without hindrance or fear of retaliation." *Milhouse v. Carlson,* 652 F.2d 371, 374 (3d Cir. 1981).  A § 1983 claim based on retaliation for a prior lawsuit requires Plaintiff to show that the defendant responded with retaliatory action sufficient to deter a person of ordinary firmness from exercising her rights and the causal connection between the lawsuit and the retaliatory action. *Kundratic v. Thomas,* 407 F. App'x 625,628 (3d Cir. 2011).  To establish the causal connection, Plaintiff must prove either: (1) an unusually suggestive proximity in timing between the protected and retaliatory activities, or (2) a pattern of antagonism coupled with suggestive timing.  *Id.*  Defendants may defeat the retaliation claim by showing that the same action would have been taken regardless of plaintiff's protected activity.  *Lauren W ex rel. Jean W v. DeFlaminis,* 480 F.3d 259, 267 (3d Cir. 2007).

Here, Plaintiff alleges she was retaliated against for her pending lawsuit against some of the Defendants.  The record, however, does not support such a claim or show any causal connection between her earlier lawsuit and being arrested.   Specifically, there is no unusually suggestive proximity in timing between Plaintiff's earlier lawsuit and the purported retaliation.  Plaintiff filed an action pursuant to § 1983 on January 23, 2012. (D.I. 36 at 15).  The arrests disputed in this case took place August 23, 2012 and October 1, 2012 – *i.e.*, eight and ten months after the filing of the earlier lawsuit.  Moreover, Plaintiff had an interaction with Troop 7 on May 27, 2012, and does

not allege misconduct by Defendants in connection with that. Finally, as already discussed, Defendants' actions on August 23, 2012 and October 1, 2012 were based on probable cause and resulted in convictions. Accordingly, Plaintiff would have been arrested and convicted based on her conduct – not based on retaliation for any pending lawsuit.

### 10.  Conspiracy

A § 1983 claim based on conspiracy requires an agreement or a plan by the Defendants, acting under color of state law, to deprive Plaintiff of her constitutionally protected rights. *Franklin Music Co. v. American Broad. Co.*, 616 F.2d 528, 534 (3d Cir. 1979); *Marchese v. Umstead,* 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000). Here, Plaintiff alleges that Defendants Corporal Layfield, Trooper Lowe, and Corporal Blakeman "each conspired and knew that plaintiff would be arrested for something after she called 911." (D.I. 1 at 2). Plaintiff complains that Defendants treated her differently, for example, taking 25 minutes to arrive, having an excessive number of police officers respond, recording only her testimony, and having "the police set her up and [know] they were going to find something to arrest her for." (*Id.*). Taken at face value, none of these claims allege violations of Plaintiff's constitutional rights. Further, Plaintiff offers nothing more than the bare allegation of conspiracy, which is insufficient to overcome summary judgment. *Maslow v. Evans,* No. 01-CV-3636, 2003 WL 22594577, at *25 (E.D. Pa. 2003). This conspiracy claim is also barred by Plaintiff's conviction on Resisting Arrest and Malicious Interference with Emergency Communications. *See McDerby v. Daniels*, No. 08–882–GMS, 2010 WL 2403033, at *5 (D. Del. 2010) (citing *Baker v. Wittevrongel*, No. 09–2174, 2010 WL 325786 (3d Cir. 2010) (dismissing conspiracy claim based on *Heck,* 512 U.S. at 485–86)).

**B.      Qualified Immunity**

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Taylor v. Barkes,* 135 S. Ct. 2042, 2044 (2015).  The "qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant,* 502 U.S. 224, 229 (1991).  The doctrine of qualified immunity extends to mere mistakes in judgment, whether the mistake is one of fact or law. *Butz v. Economou,* 438 U.S. 478, 507 (1978).

For the reasons previously stated, Trooper Miller's actions in connection with his arrest of Plaintiff for Criminal Trespass and Disorderly Conduct were objectively reasonable, as were the actions of the Defendants involved in the October 2012 arrest that led to conviction on charges of Resisting Arrest and Malicious Interference with Emergency Communications.  There was no violation of a statutory or constitutional right, and Defendants are entitled to qualified immunity in connection with the two arrests of Plaintiff.

**C.      State Law Claims[9]**

**1.      Abuse of Process**

To establish abuse of process under Delaware law, Plaintiff must prove: (1) an ulterior purpose and (2) a willful act in the use of the process not proper in the regular conduct of the proceedings. *Esposito v. Townsend,* No. 12C-08-006 (RBY), 2013 WL 493321, at *5 (Del. Super. 2013).  A definite act or threat inconsistent with process is required as well as some form of coercion not properly involved in the proceeding itself to succeed on an abuse of process claim.

---

[9]     The court has supplemental jurisdiction over Plaintiff's state law claims, which are all "part of the same case or controversy" as her federal law claims.  28 U.S.C.A. § 367(a).

*Nix v. Sawyer,* 466 A.2d 407, 412 (Del. Super. 1983). Here, Plaintiff alleges no action by Defendants that exceeds their necessary function in investigating criminal activity and effecting arrest. Moreover, as previously discussed, Plaintiff pleaded guilty to charges from the August 23, 2012 arrest and was convicted on charges arising from the October 1, 2012 arrest. Thus, her claims for abuse of process fail as a matter of law.

### 2. Battery

In her Complaint, Plaintiff alleges physical and mental abuse and intentional infliction of pain, without specifying the facts giving rise to these allegations. (D.I. 1 at 1). The closest analogous state law claim appears to be battery. The tort of battery is the "intentional, unpermitted contact upon the person of another which is harmful or offensive." *Brzoska v. Olson,* 668 A.2d 1355, 1360 (Del. 1995). The contact must offend the person's integrity, regardless of whether the contact is harmful. *Id.* The contact by Defendants that Plaintiff complained of was related to being carried into Troop 7 on August 23, 2012 and being tackled in connection with resisting arrest on October 1, 2012. As previously discussed, the officers used necessary force to carry Plaintiff from the vehicle when she was non-responsive, and to arrest her while she was actively resisting. As the force used was objectively reasonable, the complained of contact was reasonable and not offensive.

### 3. Other Claims

Plaintiff raises concerns regarding unspecified claims, such as an arrest on June 21, 2011 and an offensive touching case from May 27, 2012. Claims brought pursuant to 42 U.S.C. § 1983 are subject to the state statute of limitations for personal injury actions, which in Delaware is two years. *Poole v. Marks,* 441 F. App'x 854, 857 (3d Cir. 2011) (citing *Sameric Corp. of Del., Inc. v. City of Philadelphia,* 142 F.3d 582, 599 (3d Cir. 1998)); 10 Del. C. § 8119. Claims not filed within

the statute of limitations period are time-barred. *Turner v. Corr. Med. Servs.,* 479 F. Supp. 2d 453, 462 (D. Del. 2007).

Here, the Complaint was filed on Monday, August 25, 2014. Accordingly, the two-year statute of limitations period for all § 1983 claims raised by Plaintiff's Complaint must have accrued no later than August 23, 2012. To the extent that any of Plaintiff's allegations are based on these instances or other occurrences prior to August 23, 2012, they are time-barred.

Finally, Plaintiff raises complaints about her October 1, 2012 charges, particularly that she did not have an opportunity to cross-examine Corporal Blakeman at trial. Those claims relating to trial are contrary to the record as she did cross-examine the witness. (D.I. 37, A-240-58; A-263-68). Moreover, to the extent, this was an issue, it should have been raised in an appeal from the Delaware Court of Common Pleas to the Delaware Superior Court. DEL. SUPER. CT. CRIM. R. 37.

## IV.    **CONCLUSION**

For the foregoing reasons, the court grants Defendants' motion for summary judgment on all pending claims. An appropriate order will follow.